UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JERRY HANNAH,

          Plaintiff,

v.                                    Civil Action No. 2:20-cv-00617

MULLINS FAMILY FUNERAL HOME LLC;
and JOSEPH MULLINS, individually,

          Defendants.

MEMORANDUM OPINION AND ORDER

          Pending is defendants' Motion to Dismiss, filed
October 15, 2020.  ECF No. 9.

I. Background

          This action was initially filed in the Circuit Court
of Mingo County on August 19, 2020.  Complaint, ECF No. 1-1.
The complaint alleges that "in or around June 2017," Hannah, a
resident of Kermit, West Virginia, entered into an agreement in
Mingo County, West Virginia with defendant Joseph Mullins
("Mullins"), a resident of Inez, Kentucky, whereby Hannah would
invest $80,000.00 in defendant Mullins Family Funeral Home LLC
("the Funeral Home") in exchange for thirty percent ownership of
the Funeral Home and thirty percent of "all dividends and/or
other distributions from the business."  Id. at ¶¶ 1, 3, 9.
According to the complaint, Hannah would function as a "silent

partner" under the agreement while Mullins would serve as the funeral director and receive a salary from the entity.  Id. at ¶¶ 9, 13.

Hannah claims that Mullins registered the Funeral Home, which is located in Warfield, Kentucky, with the Secretary of State of the Commonwealth of Kentucky on June 7, 2017.  Id. at ¶¶ 2, 12.  Hannah alleges that he deposited $80,000.00 in the Funeral Home's account between June 8, 2017, and July 25, 2017, pursuant to the agreement between the parties.  Id. at ¶ 11.

According to Hannah, "[i]nitially the business relationship between the parties was amicable and consistent with the terms of the parties' agreement . . .."  Id. at ¶ 14. Over time, however, the business relationship between Hannah and Mullins deteriorated.  Id.  The complaint alleges that, on an unspecified date, Hannah proposed that the Funeral Home implement a formal operating agreement and create a board of directors for oversight of the entity, which Mullins rejected. Id. at ¶¶ 15-18.

Suspicious of Mullins' management of the Funeral Home, Hannah "exercised his rights [as] a partner . . . to inspect the financial documents of the company" and audited the Funeral Home "in late 2019" after Mullins turned over the relevant records. Id. at ¶¶ 18-19.

According to Hannah:

[t]he audit found that not only had Defendant
Mullins failed to tender any significant dividend
to Mr. Hannah, Defendant Mullins had been paying
personal bills out of the MFFH account, paying
family members' bills from the MFFH financial
accounts, and ordering and paying for
pornographic material out of the MFFH account.

Id. at ¶ 20.

Hannah states that he again called for an operating
agreement and board of directors for oversight of the Funeral
Home.  Id. at ¶ 21.  He claims that Mullins "seem[ed] to agree"
to these reforms, but after Hannah drafted the proposed
operating and board of directors agreements, Mullins "refused to
put those processes in place."  Id. at ¶¶ 22-24.

Hannah asserts that "Defendant Mullins continues to
squander company assets and self-deal in furtherance of his
personal interest while neglecting to adhere to the parties'
agreement and protect Mr. Hannah's interest in the business."
Id. at ¶ 25.  He also claims that "[b]ecause of his partnership
interest in MFFH, Plaintiff has been required to make certain
tax filings with the IRS and other governing tax entities."  Id.
at ¶ 26.

The complaint alleges seven counts: (I) breach of
contract against Mullins; (II) civil conspiracy against Mullins
and the Funeral Home; (III) conversion against Mullins and the

Funeral Home; (IV) declaratory judgment that a "legal partnership existed among the parties" pursuant to W. Va. Code § 55-13-1, et seq.; (V) unjust enrichment against Mullins and the Funeral Home; (VI) tortious interference against Mullins and the Funeral Home; and (VII) breach of fiduciary duty against Mullins.  Id. at ¶¶ 27-44.

Hannah requests the following relief:

A.  A declaration the partnership exists between the parties;
B.  Actual Damages;
C.  Compensatory Damages;
D.  Damages for emotional distress, annoyance, and inconvenience;
E.  Disgorgement of Defendants' profits and restitution;
F.  Punitive and exemplary damages;
G.  Pre-judgment interest;
H.  Attorney Fees and Cost; and
I.  All other equitable and legal relief which is deemed fair and just by the Court.

Id. at ¶ 44.

Defendants Mullins and the Funeral Home jointly moved to dismiss Hannah's complaint.  ECF No. 9.  Their motion and supporting memorandum argue that the laws of Kentucky govern this dispute and that each of Hannah's claims should be dismissed for failure to state a claim upon which relief can be granted.  See ECF No. 10.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, the court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### III.   Analysis

#### A.   Applicable Substantive Law

This case was removed to the court's docket on the basis of diversity jurisdiction.  ECF No. 1.[1]  Courts presiding over diversity cases apply the choice-of-law rules of the state in which they sit.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Accordingly, the court will apply West Virginia's choice-of-law rules to determine which substantive law applies.  Generally, "West Virginia courts apply the lex loci delicti choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury."  McKinney v. Fairchild Int'l, Inc., 487 S.E.2d 913, 922 (W. Va. 1997).

Notwithstanding this general rule, the defendants argue that in certain "complex and unusual situations," where

---

[1] While Hannah's response maintains that this court lacks jurisdiction over this civil action, see ECF No. 11, at 3, the court has since denied his motion to remand, see ECF No. 48.

the plaintiff asserts both contract and tort allegations, West Virginia courts apply the "most significant relationship test" to determine the governing substantive law.  ECF No. 10, at 7 (citing Oakes v. Oxygen Therapy Servs., 363 S.E.2d 130, 131 (W. Va. 1987)).  In Oakes, the West Virginia Supreme Court of Appeals adopted the analysis from the Restatement (Second) of Conflicts of Law, §§ 145–46 (1971).  Oakes, 363 S.E.2d at 132. Under this analysis, the court is to consider the following:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing injury occurred,
> (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties, is centered.

Id. (quoting Restatement (Second) of Conflicts, §§ 145–146 (1971)). Those contacts "should be evaluated according to their relative importance with respect to the particular issues."  Id. (quoting Restatement (Second) of Conflicts, §§ 145–46 (1971)).

Applying that test to the facts of this case, the defendants aver that Kentucky law applies, as Kentucky was the place of alleged injuries, the place the conduct giving rise to the alleged injuries occurred, and the domicile of the defendants. See ECF No. 10, at 7; ECF No. 14, at 2.

Hannah seemingly concedes that the "most significant relationship test" is applicable to this action but contends

that because the oral agreement at the center of this dispute was entered into in West Virginia, that is "the place where the relationship between the parties is centered." ECF No. 11, at 6.[2]

    The court is satisfied that under the significant relationship test, Kentucky law governs this action.  While Hannah is a domiciliary of the state of West Virginia and he asserts that the contractual agreement which underlies this dispute was entered into in a West Virginia parking lot, the vast majority of the conduct underlying this action took place in Kentucky.  Mullins Family Funeral Home LLC — the subject of the parties' agreement — was formed, registered, and has its place of business in Kentucky.  Defendant Mullins is domiciled in Kentucky.  Additionally, the defendants' allegedly wrongful acts, including the alleged failure to pay dividends and/or distributions and to agree to oversight of the business, occurred at their place of business in Kentucky.  Accordingly, the State of Kentucky has the most significant relationship to the parties and events in this case, and the court shall apply Kentucky law to resolve the defendant's motion to dismiss.

---

[2]    Despite his contention that West Virginia law applies, Hannah continued to respond to the defendants' motion to dismiss based on the laws of Kentucky.  See ECF No. 11, at 6.

## B.  Breach of Contract

A cause of action for breach of contract in Kentucky requires a plaintiff to plead the existence of the contract, the basis of the breach, and "facts which show the loss or damage by reason of the breach."  Fannin v. Com. Credit Corp., 249 S.W.2d 826, 827 (Ky. 1952).  The defendants have moved to dismiss Hannah's breach of contract claim against Mullins on several grounds.

First, the defendants state that the complaint "fails to state the contractual basis for the plaintiff's breach of contract claim."  ECF No. 10, at 8–9.  Specifically, they aver that Hannah failed to assert that Mullins' failure to tender dividends violated their contractual agreement.  Id. at 9.  The court finds that this is not a basis for dismissal.  Hannah's complaint states, pursuant to the parties' agreement, that Hannah was entitled to thirty percent of all dividends or distributions from the Funeral Home.  Compl. ¶ 9.  The complaint further alleges that "Defendant Mullins failed to tender any significant dividend to Mr. Hannah," and that he was instead using the Funeral Home account to pay personal and familial expenses.  Id. at ¶ 20.  Accepting these facts as true, it is reasonable to infer that Hannah was entitled to dividends and/or distributions from the Funeral Home and that those dividends

and/or distributions were wrongfully withheld in violation of the agreement between the parties.

Second, the defendants argue that the payment of dividends by a limited liability company is governed by Kentucky statutory law and that dividends "are to be made at the times specified by a simple majority or the 'majority-in-interest' of the members or managers." ECF No. 10, at 9–10 (citing Ky. Rev. Stat. § 275.210; Ky. Rev. Stat. § 275.175). Defendants maintain that no such dividends or distributions were ever authorized by the members or managers of the Funeral Home. Id. at 10. Inasmuch as the court has determined that Hannah has plausibly alleged that he was entitled to dividends or distributions, it finds that it need not address this argument at this stage of the proceedings. Mullins is entitled to raise these statutory provisions as a defense to Hannah's allegations at summary judgment or at trial.

Third, the defendants argue that Hannah failed to state a breach of contract claim because limited liability company members are immune from liability for claims arising in contract. Id. (citing Ky. Rev. Stat. § 275.150(1)). While Hannah failed to address this argument in his response, the court finds that dismissal is not appropriate on this ground. Kentucky Revised Statute § 275.150 provides that:

> no member, manager, employee, or agent of a
> limited liability company, including a
> professional limited liability company, shall be
> personally liable by reason of being a member,
> manager, employee, or agent of the limited
> liability company, under a judgment, decree, or
> order of a court, agency, or tribunal of any
> type, or in any other manner, in this or any
> other state, or on any other basis, for a debt,
> obligation, or liability of the limited liability
> company, whether arising in contract, tort, or
> otherwise.

Ky. Rev. Stat. § 275.150(1).  Notwithstanding this immunity, subsection (3) states, "Subsection (1) of this section shall not affect the liability of a member, manager, employee, or agent of a limited liability company for his own negligence, wrongful acts, or misconduct."  Ky. Rev. Stat. § 275.150(3).  Because Hannah alleges that Mullins himself is responsible for the breach of contract, he is not shielded from liability under Kentucky law.

Fourth, the defendants argue that the oral contract alleged in the complaint is unenforceable under Kentucky's Statute of Frauds.  ECF No. 10, at 8.  Kentucky's Statute of Fraud provides a limitation on the judicial enforcement of specific types of oral or unwritten contracts.  See Ky. Rev. Stat. § 371.010.

> In relevant part, the statute provides that:
>
> No action shall be brought to charge any person:
> . . . [u]pon any promise, contract, agreement,
> undertaking, or commitment to loan money, to

> grant, extend, or renew credit, or make any
> financial accommodation to establish or assist a
> business enterprise or an existing business
> enterprise including, but not limited to the
> purchase of realty or real property, . . unless
> the promise, contract, agreement, representation,
> assurance, or ratification, or some memorandum or
> note thereof, be in writing and signed by the
> party to be charged therewith, or by his
> authorized agent. . ..

Ky. Rev. Stat. § 371.010(9).

Defendants aver that Hannah's $80,000 payment to Mullins "was intended for the purpose of 'establishing a business enterprise,' namely defendant MFFH, and that any contract on which this investment allegedly served as consideration would therefore fall within the purview of this section of Kentucky's statue of frauds." ECF No. 14, at 4.

Hannah, on the other hand, contends that "a financial accommodation" as contemplated by § 371.010(9), "refers only to transactions in the nature of loans or extensions of credit." ECF No. 11, at 8. The court agrees. While there is little Kentucky caselaw analyzing subsection (9), the surrounding language makes clear that the provision pertains to contracts or agreements to loan money or to extend credit to another. See Atl. Coast Line R. Co. v. Com., 193 S.W.2d 749, 752 (Ky. 1946) (noting that according to the doctrine of ejusdem generis and rule of noscitur a sociis, ambiguous words in list are presumed to "embrace origins of similar character or of a nature

analogous to those expressly enumerated"). This finding is further supported by the fact that an "accommodation" is defined as "[a] loan" or some other form of financial aid. *Accommodation*, Black's Law Dictionary (11th ed. 2019); *Accommodation*, Merriam-Webster, unabridged. merriam-webster.com/dictionary/unabridged/accommodation (last visited Sept. 15, 2021) ("Loan"). Inasmuch as Hannah's payment to the Funeral Home has been characterized as an investment, rather a loan or extension of credit, the court finds that this contract was not required to be in writing by § 371.010(9) of the Kentucky Revised Statutes.

Finally, the court notes that in the defendants' reply memorandum, they attempt to raise the argument that the parties' contract should have been in writing because it "could not, by definition, be performed within a year and therefore falls within the ambit of Kentucky's Statute of Frauds, Ky. Rev. Stat. § 371.010(7) for this additional reason." ECF No. 14, at 4. Again, this argument fails. First, the court notes that this purported agreement is of unspecified duration. Second, while the court finds it highly unlikely that the parties would have intended the agreement to last for less than a year, it certainly could have. See Salyers v. Kenmont Coal Co., 11 S.W.2d 705, 707–708 (Ky. 1928) ("Ordinarily the rule is that, where a contract may be performed within a year, or where a

contract for personal services may be terminated by either party within a year, it is not within the statute of frauds."). It is not outside of the realm of possibilities that the Funeral Home could have ceased operation within a year, one of the individual parties could have passed away, or that the parties could have otherwise terminated the agreement. See Saylers, 11 S.W.2d at 707–08; Buttorff v. United Elec. Lab'ys, Inc., 459 S.W.2d 581, 586 (Ky. 1970) ("Contracts of uncertain duration are excluded; historically, the statute has been consistently applied only to those contracts where performance cannot possibly be completed within a year.").

Having rejected all of the defendants' arguments for dismissal, the court finds Hannah has stated a plausible breach of contract claim.

C. Civil Conspiracy

Under Kentucky law, a civil conspiracy claim exists where "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." Smith v. Bd. of Educ. of Ludlow, 94 S.W.2d 321, 325 (Ky. 1936).

Defendants assert that plaintiff failed to state a claim for civil conspiracy because the Funeral Home is not a "person" with whom Mullins could have conspired. See ECF No.

14

10, at 11–12.  In his response, Hannah agreed to voluntarily dismiss this claim without prejudice.  ECF No. 11, at 12. Accordingly, the civil conspiracy claim in Count II of the complaint is dismissed.

D.  <u>Conversion</u>

To state a claim for conversion under Kentucky law, a plaintiff must plead the following elements:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had the right to possess the property at the time of the conversion; (3) the defendant exercised dominion over the plaintiff's property in a way that deprived the plaintiff of its use and enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff demanded return of the property and the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damages from the loss of the property.

<u>Ford v. Baerg</u>, 532 S.W.3d 638, 641 n.2 (Ky. 2017).

Defendants suggest that the conversion claim must be dismissed because Hannah has failed to allege the first element, that he had legal title to the converted property.  ECF No. 10, at 12–13.  Hannah, on the other hand, maintains that at the time the actions in the complaint occurred he "had a right of possession to monies which Defendants exerted control over and

used for their benefit."  ECF No. 11, at 12 (citing Compl. ¶ 20).

While Hannah's complaint sufficiently alleges that he had a right to possess the withheld moneys, it does not allege that he had title to the property.  It cannot be inferred from Hannah's complaint that anyone other than the Funeral Home had title to the money within its accounts.  Consequently, the court finds that the conversion claim in Count III of the complaint must be dismissed.  See Ford, 521 S.W.3d at 641 (noting that plaintiff cannot maintain a conversion claim if she does not have legal title to the allegedly converted property); Meade v. Richardson Fuel, Inc., 166 S.W.3d 55, 58 (Ky. Ct. App. 2005) (same).

E.  Declaratory Judgment

Hannah seeks a declaratory judgment under West Virginia law that he and Mullins, through their agreement, formed a general partnership "among the parties."  Compl. ¶ 37; ECF No. 11, at 13.[3]  Defendants argue that this relief is not available because the Funeral Home was established at the outset as a limited liability company under the laws of Kentucky. ECF

---

[3]    Hannah's complaint seeks a declaration pursuant to West Virginia law, Compl. ¶ 37, however, his response addresses declaratory judgment and partnership formation under the laws of Kentucky, ECF No. 11, at 13.

No. 10, at 13-14.  Defendants further contend that conversion to a partnership under Kentucky law requires approval of all members, of whom Mullins is one, and he does not consent.  <u>Id.</u> Pursuant to Kentucky Revised Statute § 275.372, an LLC may be converted into a limited partnership only with the approval of all members.  A limited partnership may then be converted into a general partnership if the conversion is approved by all the partners.  Ky. Rev. Stat. § 362.1-903(1).

Hannah, in his response, says he is not asking the court to convert the Funeral Home into a partnership, but rather for the court to declare, as set out in the complaint, that "a legal partnership existed among the parties."  ECF No 11, at 13; Compl. ¶ 37.  In his response to the defendants' motion, Hannah specifically states that he seeks a declaration that he and Mullins are partners under Kentucky law because they associated "to carry on as co-owners of a business for profit."  ECF No. 11, at 13.

Inasmuch as the Funeral Home was established as a limited liability company under Kentucky law and operated as such for two years prior to the filing of this case, the motion to dismiss the declaratory judgment count is granted.

**F.  Unjust Enrichment**

A claim of unjust enrichment in Kentucky contains the following elements: "(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [the] benefit without payment for its value."  Furlong Dev. Co., LLC v. Georgetown-Scott Cnty. Plan & Zoning Comm'n, 504 S.W.3d 34, 39–40 (Ky. 2016) (quoting Jones v. Sparks, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)).

Hannah's complaint alleges that "Defendants have received money of Plaintiffs [sic] to which Defendants have no legal claim," and that "Defendants continue to be unjustly enriched by retaining money owed to Plaintiff and to which Defendants have no legal claim."  Compl. ¶¶ 39–40.  Defendants argue that the claim must be dismissed because Hannah "has not plead that Defendants have received or regained any benefit or enrichment from him under circumstances which were unjust."  ECF No. 10, at 14.

Hannah maintains that his complaint sufficiently alleges that the defendants have withheld distributions and dividends that are owed to him.  ECF No. 11, at 14.  Paragraph 20 of the complaint states that after auditing the Funeral Home's financial documents, Hannah discovered "not only had

Defendant Mullins failed to tender any significant dividend to Mr. Hannah, Defendant Mullins had been paying personal bills out of the MFFH account, paying family members' bills from the MFFH financial accounts, and ordering and paying for pornographic material out of the MFFH account."  Compl. ¶ 20.

These facts allow for an inference that at least the defendant Mullins, with the aid of the defendant Funeral Home, was unjustly enriched by the retention of the dividends Hannah claims he was owed but which went to the personal benefit of Mullins.  Accordingly, the court finds that the defendants are not entitled to dismissal of this claim.

G.  **Tortious Interference**

In order to prevail on a tortious interference claim in Kentucky, a plaintiff must prove:

> (1) the existence of a contract; (2) Defendant's knowledge of this contract; (3) Defendant intended to cause its breach; (4) Defendant's conduct caused the breach; (5) this breach resulted in damages to Plaintiff; and (6) Defendant had no privilege or justification to excuse its conduct.

**Dennison v. Murray State Univ.**, 465 F. Supp. 2d 733, 755 (W.D. Ky. 2006).

Defendants argue that "agents of party to a contract who act within the scope of their employment cannot interfere with that party's contract."  ECF No. 10 (citing **Carmichael-**

Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc., 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)).  As such, neither defendant could have interfered as a "third party" to Hannah's purported contract.

Curiously, Hannah stated that he "would be agreeable to voluntary dismissal of this count pending the outcome of discovery while reserving the right to amend his Complaint if necessary."  ECF No. 11, at 14.  He then declined to respond to defendants' arguments as to why the claim should be dismissed now.

Inasmuch as Hannah has failed to provide any response to the defendants' arguments, and as his complaint contains no allegation that a third party interfered with his contractual relationships, the tortious interference claim contained in Count VI is dismissed.

## H.  Breach of Fiduciary Duty

To prevail on a breach of fiduciary duty claim, a plaintiff must show: "(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) plaintiff suffered damages as a result of the breach." In re Bullitt Utilities, Inc., 612 B.R. 383, 387 (Bankr. W.D. Ky. 2020).

The Kentucky Revised Statutes provide that:

> With respect to any claim for breach of the duty
> of care, a member or manager shall not be liable,
> responsible, or accountable in damages or
> otherwise to the limited liability company or the
> members of the limited liability company for any
> action taken or failure to act on behalf of the
> limited liability company unless the act or
> omission constitutes wanton or reckless
> misconduct.

Ky. Rev. Stat. § 275.170(1).  Additionally, the statutory duties

that are imposed upon managing members of a limited liability

company are duties to the limited liability company itself, not

its members or third parties.  Ky. Rev. Stat. § 275.170(2) ("The

duty of loyalty applicable to each member and manager shall be

to account to the limited liability company . . ..").

Defendants argue that Hannah's breach of fiduciary

duty claim against Mullins must be dismissed because there is

"no allegation in the Complaint that defendant Mullins' actions

rose to the level of wanton or reckless misconduct."  ECF No.

10, at 17.  Additionally, they argue that any duty Mullins may

have "flows to the limited liability company itself and not the

other members."  Id. at 18.

Hannah argues that "[a]s the managing member of MFFH,

Defendant Mullins maintained a duty to act appropriately to

protect Plaintiff's interest in MFFH." ECF No. 11, at 15.

Hannah fails to articulate why or how that duty was owed to him,

rather than the Funeral Home itself.  Inasmuch as the breach of

fiduciary claim is based on Mullins' position as a member or managing member of the Funeral Home, Kentucky law provides that the duty he owes is to the limited liability company itself and not to other individuals.[4] See Ky. Rev. Stat. § 275.170(2); Griffin v. Jones, No. 2014-CA-000402-MR, 2015 WL 4776300, at *4 (Ky. Ct. App. Aug. 14, 2015) ("[T]he statutory duties respectively imposed upon a board member, corporate officer, or even a managing member of a limited liability company under Kentucky Revised Statutes (KRS) 271B.8-300, KRS 271B.8-420, and KRS 275.170 run directly to the corporation or limited liability company, not the members or shareholders individually.").[5] Accordingly, Hannah's breach of fiduciary duty claim in Count VII of the complaint must be dismissed.

## I. Punitive Damages

Punitive damages are damages "awarded against a person to punish and discourage him and others from similar conduct in

---

[4]    This court has already found that Hannah's purported "silent" role in the Funeral Home does not make him a member of the already established limited liability company.  ECF No. 48, at 25-26.  Instead, "Hannah appears to have assumed the role of a passive investor" in the company.  Id. at 26.

[5]    The court recognizes that the Griffin decision is unpublished, and therefore can be used only as persuasive, rather than precedential, support. The Kentucky Rules of Civil Procedure provide that opinions that are not to be published "may be cited for consideration by the court if there is not published opinion that would adequately address the issue before the court."  Ky. R. Civ. P. 76.28(4)(c).

the future." Ky. Rev. Stat. § 411.184(1)(f).  In Kentucky, such

damages are available "only upon proving, by clear and

convincing evidence, that the defendant from whom such damages

are sought acted toward the plaintiff with oppression, fraud or

malice." Ky. Rev. Stat. § 411.184(2).[6]  Punitive damages are not

available for breach of contract claims.  Ky. Rev. Stat. §

411.184(4).

     Defendants argue that Hannah's complaint fails to

allege that either defendant acted with the requisite

oppression, fraud, or malice.  ECF No. 10, at 18–19.  Hannah

retorts that his complaint "is replete with behavior" that

warrants punitive damages.  ECF No. 11, at 16.

     Hannah may not recover punitive damages for the breach

of contract claim in Count I.  See Ky. Rev. Stat. § 411.184(4).

Hannah's only other remaining count is one for unjust enrichment

in Count V.  With regard to that claim, the court finds that

Hannah has not pled that either defendant's alleged unjust

enrichment was accomplished with the requisite oppression,

---

[6]  "Oppression" is defined as "conduct which is specifically
intended by the defendant to subject the plaintiff to cruel and
unjust hardship." Ky. Rev. Stat. § 411.184(1)(a).  "Malice" is
defined as "either conduct which is specifically intended by the
defendant to cause tangible or intangible injury to the
plaintiff or conduct that is carried out by the defendant with a
flagrant indifference to the rights of the plaintiff and with a
subjective awareness that such conduct will result in human
death or bodily harm."  Id. at § 411.184(1)(c).

fraud, or malice needed to maintain his demand for punitive damages.  Without such allegations, his claim for punitive damages must be dismissed.

### IV.  Conclusion

Accordingly, it is ORDERED that the defendants' motion to dismiss (ECF No. 9) is GRANTED to the extent set forth herein.  Specifically, plaintiff's conspiracy, conversion, declaratory judgment, tortious interference, and breach of fiduciary duty claims are dismissed.  Hannah's demand for punitive damages is also dismissed.  The defendants' motion is otherwise denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER:  September 23, 2021

John T. Copenhaver, Jr.
Senior United States District Judge