UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


JERRY HANNAH,

       Plaintiff,

v.                            Civil Action No. 2:20-cv-00617

MULLINS FAMILY FUNERAL HOME, LLC;
and JOSEPH MULLINS, individually,

       Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


       Pending is Defendants' Motion for Summary Judgment (ECF No. 134), filed October 25, 2021.  Plaintiff's response in opposition (ECF No. 143) was filed on November 15, 2021, and the defendants filed a reply memorandum (ECF No. 146) on November 22, 2021.  Finally, on January 10, 2022, following the deposition of plaintiff's expert witness, the defendants filed a supplemental memorandum of law in support of their motion (ECF No. 173).[1]

---

1   Defendants propose that good cause exists for the filing of their supplemental memorandum because plaintiff's expert witness, Patrick M. Smith, CPA, ABV, CGMA, was not available for deposition until December 29, 2021.  ECF No. 173, at 1. Inasmuch as this deposition was necessarily delayed and taken after the dispositive motions deadline, the court finds that good cause exists for the supplementation and the arguments contained therein have been taken into consideration.

## I. Background

Plaintiff Jerry Hannah ("Hannah") initiated this civil action in the Circuit Court of Mingo County on August 19, 2020, asserting breach of contract, civil conspiracy, conversion, declaratory judgment, unjust enrichment, tortious interference, and breach of fiduciary duty claims.  Compl., ECF No. 1-1.

On September 18, 2020, Defendants Joseph Mullins ("Mullins") and Mullins Family Funeral Home, LLC (the "Funeral Home") removed the action to this court on the basis of diversity jurisdiction.  ECF No. 1; 28 U.S.C. § 1332.

In June 2017, Hannah and Mullins entered into an oral agreement whereby Hannah agreed to provide Mullins with $80,000 in capital contributions so that Mullins could start a funeral home.  Mullins Dep. 9-11, 28, 32 ECF No. 134-2 & ECF No. 156-1;[2] Hannah Dep. 58, 70-71 81-82, ECF No. 134-1.  This contribution was made in exchange for a 30% stake or interest in the business, or, as it has been asserted, in the distributions and dividends of the business, in which Hannah thought of himself as a silent partner in a business in which he was a 30% owner.

---

2    Both Hannah and the defendants provided the court with excerpts of Mullins's deposition.  Neither exhibit is complete.

Mullins Dep. 22–23, 30–32;[3] Hannah Dep. 69–70, 95, 104–05.  It was also understood that Mullins would receive a "reasonable salary" for his work at the funeral home, however it appears that no specific salary was agreed upon.  Hannah Dep. 89.

Hannah testified that multiple meetings took place during which he and Mullins discussed Hannah's investment and interest in the funeral home, including discussions of the structure and operation of the business.  Id. at 66–68.

Hannah also testified that he directed Mullins to visit Hannah's personal attorney, Nathan Brown ("Brown"), who helped Mullins file the organizational papers for the Mullins Family Funeral Home, LLC, established and located in Inez, Kentucky.  Id. at 70.  The articles of organization for the Funeral Home were filed with the Kentucky Secretary of State on June 7, 2017.  Art. of Org., ECF No. 134-4.  The articles list Mullins as the "Organizer" and "Registered Agent."  Id.  Mullins is also listed as the sole "member" of the LLC.  Id.

Between June and July 2017, Hannah made multiple deposits amounting to $80,000 into the Funeral Home's checking

---

3    On page 22 of his deposition, Mullins states that Hannah was to receive 30% of the dividends.  Mullins Dep. 22.  He later indicates that Hannah was to have a 30% interest in the business.  Id. at 30–32.

account.  Hannah Dep. 83–84.  The defendants do not dispute that these checks were received but note that the checks were issued from the account of Jerry Hannah, LCC, rather than from Hannah's personal account.  ECF No. 135, at 5 (citing Hannah Dep. 85–86).

Of the funds invested by Hannah, a sum of $60,000 was used to purchase a chapel for the Funeral Home.  Mullins Dep. 28.

In addition to referring Mullins to Brown, Hannah also "set him up with Michelle Hughes as the accounting person" for the Funeral Home.  Hannah Dep. 74.  Hughes works as an accountant for Hannah.  Hughes Dep. 15, ECF No. 134-6.  Hughes testified that she completed the Funeral Home's tax return for 2017 and had access to the Funeral Home's bank statements from 2017 through the middle of 2018; thereafter, Mullins and/or the Funeral Home stopped providing Hughes access to the Funeral Home's financial records.  Id. at 65–66, 89–90; Hannah Dep. 109-11 (testifying that he began receiving emails from Hughes that Mullins stopped providing her financial information).[4]

In 2018, after Mullins stopped working with Hughes, Hannah states that he "attempted to implement a board of

---

[4]   According to the defendants, an accountant by the name of Brad Hall prepared the Funeral Home's tax returns for the years after 2017.  ECF No. 135, at 8.

directors and other oversight measures."  ECF No. 143, at 3; <u>see</u>
Hannah Dep. 125–126.  Although Hannah argues that he and Mullins
"seemingly" agreed to such measures, they were never formally
agreed to.  ECF No. 143, at 3; <u>see</u> ECF No. 156-4 (unsigned board
of directors agreement).

        Thereafter, Hannah hired a financial advisor by the
name of Ronnie Spence to conduct a financial review of the
Funeral Home's finances.  Spence Rep., 156-5.  Spence conducted
a review of the Funeral Home's financial documents and found
that Mullins was using Funeral Home funds for personal and
family expenses including utilities, household expenses, and
vehicle expenses.  <u>Id.</u>  Mullins admitted that he was "living out
of the funeral home account," and for a period of time paid all
of his personal bills out of it.  Mullins Dep. 101-02.  Based on
the cited deposition testimony, it is not entirely clear as to
how long Mullins used the Funeral Home account to pay his
personal expenses; however, the Spence Report suggests this
occurred throughout 2018, and Hannah's expert report from
Patrick M. Smith, CPA, ABV, CGMA ("Smith") suggests that Mullins
continued to deduct personal expenditures as business expenses
from 2018 to 2020.  Spence Rep.; Smith Rep. 3, 21–23, ECF No.
156–6.

Mullins and the Funeral Home submit that bank records show that only seven checks written by the Funeral Home between August 2018 and June 2019 were designated as "dividends" or "distributions."  Checks, ECF No. 154-2.  Those checks total $19,492.25.  Id.  Four of those checks, amounting to $7,162.50, were written out to Hannah.  Id.  These four checks appear to be the only funds Hannah received from the defendants that are relevant to this case.[5]

On September 23, 2021, by memorandum opinion and order, the court ruled on Mullins and the Funeral Home's motion to dismiss.  ECF No. 122.  In that order, the court found that Kentucky substantive law governed the action.  Applying that substantive law, the court dismissed Hannah's claims for civil conspiracy, conversion, declaratory judgment, tortious interference, and breach of fiduciary duty.  Accordingly, the only remaining claims are those for breach of contract against Mullins and for unjust enrichment against Mullins and the Funeral Home.

---

[5]    Smith's report states that the Funeral Home's general ledger notes an additional $21,247.04 in payments to Hannah from the Funeral Home between August 2018 and December 2020.  Smith Rep. 7.  Those payments appear to be monthly promissory note payments on a separate $120,000 loan Hannah financed for the Funeral Home in August 2018 for an additional parcel of property.  Id. at 6-7.

## II.  Legal Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.

Although the court views the evidence in the light most favorable to the nonmoving party, "that party must produce evidence that goes beyond '[c]onclusory or speculative allegations' and [must] rel[y] on more than 'a mere scintilla of evidence' to withstand summary judgment."  Hodgin v. UTC Fire & Sec. Americas Corp., Inc., 885 F.3d 243, 252 (4th Cir. 2018) (first alteration in original) (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)).

### III. Analysis

A. <u>Breach of Contract Against Mullins</u>

To prevail on a breach of contract claim in Kentucky, a plaintiff must prove three elements: (1) the existence of a contract between the parties, (2) a breach of the contract, and (3) resulting damages.  <u>See</u> <u>EQT Prod. Co. v. Big Sandy Co.</u>, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019); <u>Fannin v. Com. Credit Corp.</u>, 249 S.W.2d 826, 827 (Ky. 1952).

The first element, existence of a contract, requires the plaintiff to prove the presence of the following elements: "offer and acceptance, full and complete terms, and consideration." <u>Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.</u>, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002).

Defendants argue that Mullins is entitled to summary judgment on Hannah's breach of contract claim on four grounds: (1) Hannah has no right to receive dividends or distributions from the Funeral Home because he is not a member of the established LLC; (2) to the extent a contract was created between Mullins and Hannah, there is no evidence of breach; (3) Kentucky's Statute of Frauds precludes a finding that a contract was created, and (4) Hannah lacks standing to pursue the breach of contract claim.  Each argument is addressed separately

8

1. *Kentucky Statutory Law Regarding Distributions and Dividends*

Pursuant to Kentucky statutory law, LLC members are entitled to distributions of LCC cash or assets.  Ky. Rev. Stat. § 275.210.  Additionally, unless the LLC's articles of organization, written agreement, or Kentucky statutes provide otherwise, distributions can only be compelled by a vote of the LLC's members.  Ky. Rev. Stat. § 275.175(1).

Defendants aver that these statutory provisions governing LLCs "do not authorize payment of distributions to anyone but 'members.'"  ECF No. 135, at 15.  Accordingly, the defendants submit that Hannah cannot "circumvent these statutes through an inconsistent common law claim for breach of an oral contract."  Id.

While the court agrees that Hannah has no authority under Kentucky law to compel distributions from the Funeral Home, the court cannot conclude that these statutory provisions preclude Hannah from enforcing the oral agreement that Mullins has personally admitted to entering.  Similarly, the court has been presented with no statutory provision that prevents Hannah from claiming a right to a portion of the distributions or dividends that Mullins received or declared as the sole member of the Funeral Home.

This court has already concluded that "economic interests in an LLC are separable from the ownership interests held by its members." Order on Remand 25, ECF No. 48; <u>see</u> Ky. Rev. Stat. § 275.225(1); Ky. Rev. Stat. § 275.195(1); <u>Spurlock v. Begley</u>, 308 S.W.3d 657, 660 (Ky. 2010). Accordingly, Mullins was free to assign 30% of his economic interest in the business.

Additionally, to the extent Mullins attempts to relitigate whether Hannah may be personally liable for this breach,[6] the court notes Hannah has clarified that his breach of contract claim is asserted against Mullins in his individual capacity. <u>See</u> ECF No. 143, 8–9 n.5 ("Here, Mr. Hannah asserts that Mr. Mullins is liable not simply because he is a member of MFFH, but because Mr. Mullins himself breached his contract with Mr. Hannah.").

In sum, the statutory provisions cited by Mullins do not preclude a finding of liability for breach of contract.

---

[6] In the memorandum opinion and order on the defendants' motion to dismiss, the court rejected the argument that Mullins was insulated from suit by Ky. Rev. Stat § 257.150(1) which provides LLC members with immunity for the wrongful acts of the LLC. <u>See</u> ECF No. 122, at 10–11.

2. *Evidence of Breach*

Next, the defendants' motion argues that there was no breach of contract on two grounds: (1) there was no agreement to implement a board of directors or oversight for the Funeral Home and (2) Hannah received the distributions he claims he was entitled to under the alleged oral contract.

In response to the motion, Hannah "expressly abandon[ed] any claim based on the Defendants' failure to implement a board of directors or other oversight." ECF No. 143, at 7 n.4. Accordingly, the court will only address the second argument regarding breach.

Specifically, Mullins submits that, if there is an enforceable contract between Mullins and Hannah, Hannah cannot establish a breach because he has "actually received more than his alleged thirty percent (30%) of the dividends and/or distributions he alleges he is entitled to under the alleged terms of the oral contract." ECF No. 135, at 16–17; ECF No. 173, at 2–4.

Mullins's argument is based on bank records from the Funeral Home which show that between August 2018 and June 2019, only seven checks written from the Funeral Home's account were classified as "dividends" or "distributions." ECF No. 154-2.

Those checks amounted to a total of $19,492.25.  Id.  Four of
those checks, totaling $7,162.50, were made out to Hannah.  Id.
Accordingly, Mullins argues that Hannah "received thirty-seven
percent (37%) of all [Funeral Home] monies categorized as
distributions to date."  ECF No. 135, at 17; see ECF No. 173, at
3–4 (noting that Plaintiff's expert "agreed that all of the
dividends and distributions paid by its majority-in-interest
owner, as reflected in the memo lines of the various checks
designated by defendant Mullins as distributions and dividends,
Mr. Hannah received more than thirty percent (30%)").

    The court finds, pursuant to the mutually recognized
oral agreement, Hannah is entitled to 30% of the business
dividends or distributions, whatever form they may have taken.
See Mullins Dep. 22, 32; Hannah Dep. 95.  Mullins has provided
no evidence to suggest that the agreement was limited to
payments specifically designated as "distributions" or
"dividends" on the memo line of a check, nor has he provided the
court with any legal authority that would support such a
limitation on the oral agreement.

    According to Hannah's expert witness,[7] Mullins received
$141,397 in distributions between 2017 and 2020 and Hannah

_____

7    Defendants moved to preclude the plaintiff from relying
upon the report of Smith, alleging that the plaintiff's

received $7,163.  Smith Rep. 9, ECF No. 156-6.[8]  Per Smith's
calculations, "[a] reasonable estimate of the range of
distributions owing to Mr. Hannah from the time the business
started in 2017 through 2020 is $53,437 to $63,873."  Id. at 4.[9]
The more conservative number is based upon historical
distributions made to Hannah and Mullins, while the greater
number is based upon Funeral Home income that would have been
available for distribution.  Id. at 8–11.

      Given the foregoing, it is clear that the sum of the
distributions made by the Funeral Home to Mullins, and thus the
amount due to Hannah under the oral agreement, remains a
question of material fact.  Consequently, the court denies the
defendants request for summary judgment on this ground.

---

supplemental report was untimely.  ECF No. 136.  By a separate
order, the court has denied that motion.  ECF No. 179.
[8]    Smith's report notes that the historical distributions
listed in his report "do not include disbursements for the
benefit of either party that were recorded as expenses by the
business," and were based upon the 2017 tax returns and the 2018
to 2020 general ledger reports for the Funeral Home.  Smith
Rep. 8.
[9]    Smith's analysis is based off of an understanding that
Hannah was to "retain thirty (30) percent ownership of MFFH, and
as such, would be entitled to thirty (30) percent of all the
dividends and/or other distributions from this business."  Smith
Rep. 3.  To calculate the amounts due, Smith analyzed tax
returns, general ledger data from the Funeral Home that was
provided during discovery, financial documents that were
exchanged during discovery, as well as records related to
Hannah's capital contributions.  Id. at 3–8.

3. *Kentucky's Statute of Frauds*

The defendants also assert that Hannah's breach of contract claim fails because Kentucky's Statute of Frauds applies and bars enforcement of the oral agreement.

As previously noted by the court, Kentucky's Statute of Frauds provides a limitation on the judicial enforcement of specific types of oral or unwritten contracts.  <u>See</u> ECF No. 122, at 11-12; Ky. Rev. Stat. § 371.010.

At the motion to dismiss stage, the defendants argued that the oral agreement between the parties fell within the purview of subsection (9) of the statute of frauds, which requires agreements to make "financial accommodation[s] to establish or assist a business enterprise or an existing business enterprise including, but not limited to, the purchase of realty or real property" to be in writing.  ECF No. 9, at 10-11.  In support of their motion, defendants argued that Hannah's $80,000 payment "was indeed for the purpose of 'establishing a business enterprise,'" e.g., the Funeral Home, and thus was not judicially enforceable under this section.  ECF No. 14, at 4.

In its September 23, 2021 memorandum opinion and order, the court rejected this argument, finding that subsection

(9) applied to "contracts or agreements to loan money or to extend credit to another." ECF No. 122, at 12. Inasmuch as Hannah's payment to the Funeral Home was characterized as an investment, rather than a loan, the court found that this subsection was inapplicable to the oral agreement at issue. Id. at 13.

The defendants now seek to relitigate this finding, submitting that "deposition testimony developed since the Motion to Dismiss was filed show[s] that the discussions which form[ed] the basis of the alleged oral agreement in June 2017 centered upon the purchase of real property, the so-called 'chapel,' which brings it within the purview of subsection (9) as an 'accommodation to purchase ..[.] realty or real property,' [that] serves as the base of operations for the funeral home of defendant MFFH." ECF No. 135, at 17.

During his deposition, Hannah testified that Mullins asked him "to assist him in buying the chapel to get this entity started." Hannah Dep. 65. Hannah also testified that he and Mullins met at the chapel in June 2017 and looked through it with the realtor. Id. at 67-68. Thereafter, he stated that he and Mullins "committed on the building right after the June meeting[.]" Id. at 68.

While these statements surely suggest that both Hannah and Mullins contemplated part of Hannah's investment was to be used to purchase the chapel, that fact does not change the court's finding that an "accommodation" under § 371.010(9) is something akin to a loan or extension of credit.  Inasmuch as Mullins testified that Hannah's contribution was not a loan, see Mullins Dep. 15, the court declines to revisit or revise its prior findings.

Additionally, in their reply, the defendants seek to assert that subsection (8) of Kentucky's Statute of Frauds also precludes enforcement of the oral contract.  ECF No. 146, at 5.  Subsection (8) states that any contract "for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate," shall not be the subject of a cause of action unless the contract is "in writing and signed by the party to be charged therewith[.]"  Ky. Rev. Stat. § 371.010(8).

Inasmuch as this argument is not asserted in the defendants' opening memorandum, it has been waived.  See Moseley v. Branker, 550 F.3d 312, 325 n.7 (4th Cir. 2008)(noting "[a]s a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."); see also, Huskey v. Ethicon, Inc., 29 F. Supp.

3d 736, 745 n.4 (S.D.W. Va. 2014) (stating "an argument raised
for the first time in a reply brief or memorandum will not be
considered.").

        Furthermore, even if the argument had been properly
raised, the parties' testimony, which has been cited in this
opinion, suggests that the crux of the agreement between Hannah
and Mullins was that Hannah would make capital contributions in
exchange for some interest in the business.  Although Hannah's
deposition testimony highlights an understanding that some of
the funds would be used to purchase the chapel, the fact that
some, or even most, of that money was going to be used to
purchase the chapel does not in and of itself make the agreement
center around a purchase of real estate.

        Accordingly, the court finds that Kentucky's Statute
of Frauds does not prevent the judicial enforcement of the
parties' oral agreement.

        4. *Standing Under Rule 17*

        Federal Rule of Civil Procedure 17(a)(1) states that
"[a]n action must be prosecuted in the name of the real party in
interest."  The rules "requires that the plaintiff actually
possess, under the substantive law, the right sought to be

enforced." <u>Curtis Lumber Co., Inc. v. La. Pac. Corp.</u>, 618 F.3d 762, 771 (8th Cir. 2010) (internal quotation marks omitted).

In a footnote, the defendants suggest that "[t]he undisputed facts show that Jerry Hannah, LLC . . . was the actual 'investor' in [the Funeral Home] and the real party in interest hereunder Fed. R. Civ. P. 17." ECF No. 135, at 14 n.7. This argument is more fully developed in the defendants' reply memorandum, in which they state that Jerry Hannah, LLC provided the consideration supporting the alleged contract. ECF No. 146, at 5. Accordingly, the defendants maintain that "[t]he [ensuing] failure of consideration makes summary judgment for the Defendants appropriate." <u>Id.</u>

Once again, the court finds this argument was not appropriately raised by the defendants. <u>See</u> <u>Ethypharm S.A. France v. Abbott Laby's</u>, 707 F.3d 223, 231 n.13 (3d Cir. 2013) (noting that arguments must be raised in opening briefs to be considered and arguments raised in passing, such as in a footnote, are insufficient); <u>Moseley</u>, 550 F.3d at 325 n.7 ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived.").

Notwithstanding that conclusion, even if the argument had been properly raised, the court agrees with Hannah, who

argues that "[t]here is no dispute that the oral contract at issue was between Mr. Mullins and Mr. Hannah himself."  ECF No. 143, at 3.   "The fact that Mr. Hannah performed his obligations under the contract by directing funds through an account he controls is of no moment."  Id. at 3 n.2.  While the defendants cite to a string of cases that stand for the proposition "that limited liability companies are separate legal entities from their majority and even sole owners," ECF No. 146, at 5, the defendants cite to no legal authority supporting their position that consideration for a contract cannot be channeled through a contracting party's single member LLC.[10]

Finally, the court notes that there is a difference between constitutional standing and standing under Rule 17. Unlike Article III standing, Rule 17 "real party in interest"

---

[10]   For example, in Miller v. Paducah Airport Corp, the Supreme court of Kentucky held that the president of a corporate car rental business was not a real party in interest in an action seeking a judgment that the car rental service was entitled to lease space in the airport's terminal.  551 S.W.2d 241, 242–44 (Ky. 1977).  There the court recognized that this issue was not whether the defendants were discriminating against the president of the corporation, but whether the defendants were discriminating against the corporation itself.  Id.  The court specifically cited to deposition testimony in which the president testified that he was not in a contractual relationship with the defendant airport.  Id.  As discussed throughout this opinion, both parties in this case have testified that the individual parties, Jerry Hannah and Joseph Mullins, agreed to the business sharing arrangement. Accordingly, the Miller case is not persuasive in the matter at hand.

standing is waivable.  See Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc., 7 F.4th 50, 63 (2d Cir. 2021); RK Co. v. See, 622 F.3d 846 (7th Cir. 2010); Fed. Deposit Ins. Corp. v. Bachman, 894 F.2d 1233, 1236 (10th Cir. 1990).

Defendants participated in this case for more than fourteen months before raising an argument under Rule 17, and even then, only did so in a cursory fashion.  Moreover, the defendants have been in receipt of the checks issued by Jerry Hannah, LLC since July of 2017, more than three years before this case was filed on August 19, 2020.  Accordingly, even if the defendants' Rule 17 argument had merit and had been adequately argued in the defendants' opening memorandum, the issue has surely been waived by the defendants' delay.

Ultimately, Hannah has provided sufficient evidence to show that a valid contract existed between the parties, pursuant to which Hannah and Mullins agreed that Hannah was to provide $80,000 in capital investments in exchange for a 30% interest in the business.  Material questions of fact remain as to whether Mullins breached that agreement by failing to make sufficient payments to Hannah, and thus, Hannah's breach of contract claim may proceed to a jury.

B. <u>Unjust Enrichment Against Mullins and the Funeral Home</u>

A claim of unjust enrichment in Kentucky contains the following elements: "(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [the] benefit without payment for its value." <u>Furlong Dev. Co. v. Georgetown-Scott Cnty. Plan. & Zoning Comm'n</u>, 504 S.W.3d 34, 39–40 (Ky. 2016) (quoting <u>Jones v. Sparks</u>, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)).

It is undisputed that a claim of unjust enrichment is an equitable remedy that "is unavailable when the terms of an express contract control." <u>Furlong Dev. Co.</u>, 504 S.W.3d at 40; <u>see</u> ECF No. 135, at 18; ECF No. 143, at 11. Consequently, inasmuch as the court has determined that the agreement between Hannah and Mullins is a contract, Hannah's claim for unjust enrichment against Mullins cannot continue.

Regarding the unjust enrichment claim against the Funeral Home, the court finds that Hannah has failed to produce evidence that the Funeral Home itself has been unjustly enriched. The oral agreement at issue is between Hannah and Mullins. Even if the court were to accept that Hannah conferred a benefit upon the Funeral Home by writing the capital investment checks out to the Funeral Home's business account, as

21

previously noted, Hannah is not a member of the LLC and therefore is in no position to declare or demand dividends from the Funeral Home.  Furthermore, Hannah has not produced any evidence suggesting that the Funeral Home has inequitably retained the benefit.

Insofar as Hannah cannot proceed on his unjust enrichment claim against Mullins individually and has produced no evidence as to the unjust enrichment claim against the Funeral Home as an entity, the court grants the defendants' motion for summary judgment as to Count V of Hannah's complaint.

C. Damages for Emotional Distress, Annoyance, and Inconvenience

Hannah's complaint includes a request for damages for "emotional distress, annoyance, and inconvenience."  Compl. 7. Defendants submit that Hannah is not entitled to such damages under Kentucky law, as these damages are reserved for tort, rather than contractual claims.  ECF No. 135, at 19.  Hannah did not respond to this argument.

Pursuant to Kentucky law, "[d]amages for breach of a contract are normally that sum which would put an injured party into the same position it would have been in had the contract been performed," which damages include "general" and "special" damages."  Univ. of Louisville v. RAM Eng'g & Const., Inc., 199

S.W.3d 746 (Ky. Ct. App. 2005).  Longstanding Kentucky case law holds that damages for mental anguish, annoyance, or inconvenience are not recoverable in contract actions.  <u>See Robinson v. W. Union Tel. Co.</u>, 68 S.W. 656 (Ky. 1902). Accordingly, the defendants are entitled to summary judgment as a matter of law to any claims for emotional, annoyance, or incontinence damages.

### D. Conclusion

In light of the foregoing, the Court ORDERS that the Defendants' Motion for Summary Judgment (ECF No. 134) be, and hereby is, granted in part and denied in part.  Summary judgment is granted in favor of the defendants as to Hannah's claim of unjust enrichment and Hannah's demand for emotional damages. The motion is otherwise denied.

The court further ORDERS that defendant Mullins Family Funeral Home, LLC be, and hereby is, dismissed from this action.

The Clerk is requested to transmit this Order and Notice to all counsel of record and to any unrepresented parties.

ENTER: January 20, 2022

John T. Copenhaver, Jr.
Senior United States District Judge